UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

JAMIE L. BOHANNON, )
   )
   Plaintiff, )
   )
v. )
   )   CV616-109
NANCY A. BERRYHILL,[1] )
Acting Commissioner of )
Social Security, )
   )
   Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Jamie Bohannon seeks judicial review of the Social Security Administration's denial of her application for Disability Insurance Benefits (DIB).

## I. GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security, and has been substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[2] to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational

---

[2] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

2

Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

## II. ANALYSIS

Bohannon, who was 33 years old when her DIB claim was denied, alleges disability beginning August 9, 2010. Tr. 33 & 57. She attended high school up to the 10th grade and has past work experience as a cashier, deli cutter, and "cashier checker." *Id.* at 23 & 59. After a hearing, the ALJ issued an unfavorable decision. *Id.* at 1-4, 11-24 (amended decision addressing counsel's additional arguments), *id.* at 33-41 (initial decision). He found that Bohannon's degenerative disc disease, lower extremity neuropathy, pain disorder, status post-spinal fusion at L5-S1 and post-right knee surgery, obesity, borderline intellectual functioning, anxiety, and adjustment disorder (with chronic mixed anxiety and depressed mood) constituted severe impairments but did not meet or medically equal a Listing. *Id.* at 13-16. Based on the evidence of record, the ALJ found that she retained the RFC for light

work,[3] except that she

> . . . can frequently climb ramps and stairs but occasionally climb ladders, ropes, and scaffolds; she can occasionally stoop, crouch, crawl, and kneel; she would require a sit/stand option at will; and she should avoid concentrated exposure to hazardous machinery and unprotected heights. [She] is limited to perform simple, routine, repetitive tasks; she can maintain concentration for two-hour time increments; she can have occasional interaction with co-workers, supervisors, and the public. There should be infrequent workplace changes gradually introduced, but no fast-paced production work.

Tr. 16.

Despite these restrictions, the ALJ determined plaintiff was capable of performing the requirements of representative occupations such as parking lot attendant, surveillance system monitor (both unskilled light work with an SVP[4] of 2), and night guard (semi-skilled light work with an SVP of 3). Tr. 24. Hence, Bohannon was not disabled. *Id.* She disagrees, arguing that the ALJ erred in his evaluation of the medical evidence. Docs. 10-1 & 14.

---

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b).

[4] Specific Vocational Preparation (SVP) is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, App. C.

4

## A. Step Two of the Sequential Evaluation

Plaintiff argues that the ALJ erred by failing to find her "cervical spine condition was not a 'severe impairment' [at Step two] for the purposes of her disability claim." Doc. 10-1 at 9. Step two, however, is a "screening" or "filter" stage "to eliminate groundless claims." *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). It thus "requires only a finding of 'at least one' severe impairment to continue on to the later steps." *Id.* (quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

> Here, the ALJ found multiple severe impairments and accordingly proceeded to step three of the evaluation. Based on our precedent and the regulations, therefore, it is apparent that there is no need for an ALJ to identify every severe impairment at step two. Accordingly, even assuming that [Bohannon] is correct that her additional impairment[ ] w[as] 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below.

*Id.* Given that the ALJ also discussed *why* he declined to consider her herniated cervical disc a severe impairment (tr. 14 (noting there "is no evidence to support a finding that this condition causes any significant limitation of physical or mental ability to perform basic work activities lasting 12 months or more.")) and accommodated the non-severe impairment in a strength- and posturally-restrictive RFC and

5

hypotheticals posed to the VE (tr. 16 & 85-87), there is no error.

B.  **Medical Opinion Evidence**

Bohannon faults the ALJ's rejection of the opinions of her treating neurosurgeon, Dr. Hugh Smisson, and her primary care physician, Dr. Hamant Patel. Docs. 10-1 & 14. "As a general rule, 'the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists.'" *Black v. Colvin*, 2015 WL 7185506 at * 3 (S.D. Ga. Nov. 13, 2015) (quoting *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006), *adopted*, 2016 WL 296260 (S.D. Ga. Jan. 12, 2016)).

"The opinion of a treating physician, such as [Drs. Smisson and Patel], 'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" *Phillips*, 357 F.3d at 1240 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own

6

medical records. When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* (cites omitted).

Plaintiff contends that the ALJ failed to properly weigh the opinion of her treating neurosurgeon, Dr. Smisson. Doc. 10-1 at 11-12. The ALJ rejected Dr. Smisson's opinion that Bohannon is totally unable to work "because his treatment notes and clinical and diagnostic testing and findings (MRI, EMG/Nerve Conduction Study), and physical exams do not support his statement of disability" and his opinion that Bohannon must lie down to relieve her back pain "because he has provided no details regarding the duration of time that is required during the workday for such restrictions." Tr. 22. Plaintiff disputes that the ALJ's articulated reasons are specific enough to survive judicial review, because he failed to "cite to which treatment notes, diagnostic testing and physical exams supported this conclusion" and Dr. Smisson actually did specify both frequency and duration of her prone-time needs. Doc. 10-1 at 11-12.

Dr. Smisson, however, did not provide any support for his opinion that plaintiff needed to lie down beyond his conclusion that was necessary. Rather, the entire opinion comprises a two-question check-list form

solicited by counsel (checking a need to lie down "30 minutes to an hour" "three times or more" "in a typical day") accompanied by a single-sentence letter that Bohannon "currently requires the ability to lie down during the day time to relieve her back pain, which makes it hard for her to maintain employment." Tr. 983-84. There is no reference to objective medical evidence, clinical findings or observations, or even a *diagnosis* to support the endorsed limitations, aside from a vague reference to a clinical history of "back pain." *Id.* at 984. And brief, conclusory opinions are not entitled to great weight, treating physician or not. *Id.* at 22 (citing *Johns v. Sec. of Health & Hum. Servs.*, 821 F.2d 551, 555 (11th Cir. 1987)); *see Lewis*, 125 F.3d at 1440; *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Bloodsworth v. Heckler*, 703.F2d 1233, 1240 (11th Cir. 1983).[5]

And contrary to plaintiff's contentions, the ALJ *did* point with specificity to objective medical evidence, clinical findings, and treatment

---

[5] The same goes for plaintiff's treating physician Dr. Patel, who checked a box next to the word "yes" on a counsel-generated checklist asking whether he agreed with "[his] professional colleague" Dr. Smisson's (misquoted) opinion that Bohannon "must have the ability to lie down unpredictably during the day to alleviate the severity of her symptoms" and "is not able to work under any circumstances." Tr. 963. In fact, Dr. Smisson never used the word "unpredictably" *nor* did he proclaim she could not work "under any circumstances" in his February 2014 letter to counsel. *See* tr. 983 (no use of "unpredictably") & 984 (opining that Bohannon's need to lie down would "make[ ] it hard for her to maintain employment" -- not *impossible*).

8

notes that were inconsistent with Dr. Smisson's opinion of total disability. Tr. 22. The MRI, conducted in February 2013, showed minimal disc bulge and mild ligamentous hypertrophy at L4-5, post-operative granulation tissue (encasing and slightly distorting the right S1 nerve root), and mild heterogeneous enhancement of the right S1 nerve root. *Id.* at 903-04. These are *not* moderate or severe findings endorsing total disability, though they certainly do reflect Bohannon's status post-operation and support her complaints of some level of back pain. *See id.* at 884 & 892 (Dr. Smisson's opinion that the post-surgery imaging studies (MRI and x-rays) "have looked good"); *id.* at 899 ("I really do not see anything that I can attribute [Bohannon's pain] to on MRI"); *id.* at 902 (opinion right-side granulation to be a "normal postoperative finding"); *id.* at 956 (opining MRI showed no evidence of nerve compression"); *see also id.* at 836 (examining physician Dr. Troup's opinion that nothing on the MRI accounted for her complaints); *id.* at 971 (examining physician Dr. Taorima's opinion that plaintiff's "bilateral complaints [ ] are beyond the scope of demonstrable lesions").

The September 2013 EMG/Nerve Conduction Study revealed "evidence of severe chronic abnormalities at L5 myotomal distributions

9

. . . implicating a long standing lesion irritating the motor as well as the sensory components of L5 nerve root and [ ] causing significant axonal degeneration detected on [the] right lower extremity." Tr. 845. However, it also revealed multiple normal findings at the bilateral tibial motor nerves' distal latency, amplitude, and conduction velocity as well as normal bilateral soleus H-reflexes. *Id.* Further, reviewing physician Dr. Yousef specifically opined that the 2013 study "showed no significant changes" compared to a 2012 study that revealed normal bilateral findings. *Compare id.* at 845 *with id.* at 649 (normal bilateral EMG nerve conduction study in November 2012). In other words, some abnormal and some normal findings, largely unchanged from a year prior, supporting postural and strength restrictions and subjective lower back pain complaints -- *not* evidence supporting a finding of total disability.[6]

And the clinical findings were largely normal: in spring 2012 and summer 2013, Dr. Smisson observed plaintiff had no clonus, Babinski, or Hoffman signs, 5/5 muscle strength in all extremities and muscle tone

---

[6] Particularly so given that the state agency consultative physicians, upon examining these exact medical records, concluded that Bohannon could work with appropriate strength and postural restrictions. Tr. 90-102 (based upon medical records through February 2013, including the 2012 nerve conduction study (*see id.* at 92)); *id.* at 103-119 (based upon medical records through May 2013, including the MRI (*see id.* at 105)).

within normal limits (contradicting the type of muscle wasting that would occur with total disability and spending days prone). *See, e.g.*, tr. 480-81, 491, 529, 884, 888, 978. Dr. Patel too noted full muscle strength, contradicting claims of total disability. *See, e.g., id.* at 609, 618, 629, 668, 672, 676, 681, 688, 696, 700, 824, 855, 866, 870, 874, 910, 914, 918, 930, 936, 945. The ALJ did not err in discounting Drs. Smisson's and Patel's unsupported opinions of total disability.

### III. CONCLUSION

Because the ALJ's decision is supported by substantial evidence in the record, the Commissioner's final decision should be **AFFIRMED**.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this

R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this __24th__ day of April, 2017.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA